MICHAEL GLYNNE, Appellant, v. NATIONAL EXHIBITION COMPANY, Respondent.

Second Department, March 16, 1923.

Negligence — action to recover for personal injuries — plaintiff fell while walking down concrete incline from defendant's grandstand to elevated railroad station — incline, which had pitch of one foot in eight, had become smooth through use and was wet and slippery — complaint should not have been dismissed at close of plaintiff's case — error to reject expert evidence that pitch of incline was excessive — error to exclude evidence of prior accidents.

It was error for the court to dismiss the complaint at the close of the plaintiff's case in an action to recover for personal injuries, where it appeared that the plaintiff, while walking down a concrete incline from defendant's grandstand to an elevated railroad station, fell and fractured his leg; that the incline had a pitch of twelve and one-half per cent, or a drop of one foot in every eight feet; that when it was built the floor was scored but at the time of the accident the scoring had worn down and become smooth, and that the floor was wet and slippery.

It was error for the court to strike out testimony by an expert that the pitch of the incline was excessive where the only purpose of the evidence was one of comparison with inclines in general use.

It was likewise error for the court to exclude testimony of prior accidents of a similar character occurring under like conditions.

APPEAL by the plaintiff, Michael Glynne, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 17th day of April, 1922, upon the dismissal of the complaint at the close of the plaintiff's case.

Almet F. Jenks [Gustavus A. Rogers and Harry L. Kreeger with him on the brief], for the appellant.

George F. Hickey [William Butler with him on the brief], for the respondent.

KAPPER, J.:

The plaintiff, with two friends, was a spectator at a baseball game conducted by the defendant on the Polo Grounds, in the city of New York, on August 13, 1920. The game was attended

by about 17,000 people. During the game it had rained intermittently. At the close of the game the plaintiff and his friends started to leave the grounds, in doing which they proceeded along an inclined runway or ramp which connected the covered stand of the grounds provided for spectators with the elevated railroad structure located in front of the baseball park. This ramp or runway was uncovered. It was thus exposed to the elements. It was built on a steep incline, a more than ordinary incline, the pitch or descent in the direction in which the plaintiff walked being a twelve and one-half per cent grade, or a drop of one foot in every eight feet. The ramp was constructed of concrete more than ten years ago. In the original construction the flooring had been marked or corrugated by what were called " scorings," which had become smooth through long use and the immense pedestrian traffic over it. On the day in question, and at the time of the accident, due to the rain and traffic, the floor or walking surface had became slippery from " wet," " slimy " and " muddy " conditions. The plaintiff slipped and fell and fractured his leg. He claims negligence on the part of the defendant, and sought to prove it by the above-enumerated facts and circumstances. He also endeavored to show that prior to the day in question he had seen others slip on this ramp where the circumstances and conditions were not at all dissimilar. At the close of his case he was nonsuited. We think that on the record now before us the case should have been submitted to the jury. Had the original construction of corrugation and markings sufficient to aid in preventing slipping been present at the time of the accident, it may be that a jury would say that he would not have slipped. There was evidence that the grade was extraordinary. It was characterized by an expert witness as excessive. This characterization was stricken out, but we think erroneously when the only object was one of comparison with ramps and runways in general use. It was made clear, however, that the ordinary grade of such structures is about eight per cent. This one was twelve and one-half per cent. Considering these factors, the exposure of the runway to the elements, the heavy traffic, and the conditions then obtaining which had continued for a long period of time, and the smoothened walking surface brought about by wear and tear, we do not think that we should say as matter of law that a jury could not find that the defendant ought reasonably to have anticipated the likelihood of such an accident happening. We are of the opinion, too, that as bearing upon the question of negligence the testimony of prior accidents of a similar character occurring under like conditions should have been received.

The judgment should be reversed upon the law and the facts, and a new trial granted, with costs to abide the event.

KELLY, P. J., RICH and JAYCOX, JJ., concur; YOUNG, J., concurs in the result, but is of opinion that the construction and maintenance of the ramp at too steep an incline would constitute a nuisance, and it was for the jury to say whether it was so constructed and maintained.

Judgment reversed upon the law and the facts, and a new trial granted, with costs to abide the event.